NORMAN, APPELLANT, *v.* CORBLEY, RESPONDENT.

(No. 2,046.)

(Submitted December 15, 1904. Decided March 13, 1905.)

*Water Rights—Irrigation—Appropriation—Priorities—Tenancy in Common—Abandonment—Conveyance of Rights—Prescription—Pleadings—Motion for Judgment—Cross-examination.*

Judgment on Pleadings—Complaint—Denials—Proof.
    1. Where denials contained in the answer required proof on the part of the plaintiff as to some of the material allegations of his complaint, plaintiff's motion for judgment on the pleadings was properly overruled.

Water Rights—Title to *Corpus* of Water—Prescription.

2.   Under Civil Code, section 1880, giving the right to appropriate the waters flowing in a stream, the title to the *corpus* of such waters cannot be acquired so that a prior appropriator, who has all the water that his necessities require, cannot question the right of another to use the remainder of the water, nor maintain an action against him on account of such use, and the latter cannot, so long as the former's enjoyment of all the water that he needs remains unimpaired, acquire a prescriptive right to use any given quantity of the water to the detriment of the former's appropriation.

Water Rights—Abandonment—Intent.

3.   Abandonment is a matter of intention, and consists in the giving up of a thing absolutely without reference to any particular person or purpose.

Water Rights—Joint Notice of Appropriation—Abandonment.

4.   A joint notice, filed by successive appropriators of water, stating that they have a claim and right to use a given quantity of water on certain described lands, and that they appropriated the water as to one ditch in one year and as to another ditch in another year, does not of itself constitute or show an abandonment of prior appropriations, and the initiation of a new right and appropriation.

Water Rights—Tenancy in Common—Unity of User.

5.   To constitute a tenancy in common in a water right, there must be a right to unity of user of the water, and if such right is destroyed, the common tenancy ceases to exist.

Water Rights—Notice of Appropriation—Effect.

6.   Prior to March 12, 1885, no notice of the location or record of the appropriation of a water right was required.   The Act of that date (Compiled Statutes of 1887, fifth division, section 1258), requiring persons who had theretofore acquired water rights to file a written declaration with the recorder, by its terms protected prior appropriations.   *Held*, that the recording by previous appropriators of a notice in accordance with the Act did not of itself constitute an appropriation, nor affect, as between the appropriators, their respective rights to the water, but merely constituted notice to the world of their claims under their appropriations.

Water Rights—Joint Notice of Appropriation—Tenancy in Common.

7.   Plaintiff's predecessors in interest appropriated waters for irrigation in 1866.   Defendant made a subsequent appropriation in 1871 or 1874.   In 1874 the parties, by oral agreement, and during that season only, used the water alternately.   During one season in the early '80's there was a scarcity of water, and they used the same half and half.   In 1885 plaintiff and defendant filed a joint notice of their appropriation, which stated that the appropriation of each amounted to two hundred inches.   Plaintiff in no manner waived or abandoned at any time his prior appropriation.   *Held*, that none of the things specified constituted a conveyance by plaintiff to defendant of any interest in the former's prior appropriation, that they were not evidence that one-half the water was not sufficient for plaintiff's use, that there was not any unity of possession in the ditches, land, date of appropriation, use of the water, or the right of its use, and hence there was no tenancy in common.

Water Rights—Rights of Prior and Junior Appropriators.

8.   Under Civil Code, section 4605, requiring one to so use his own rights as not to infringe the rights of another, one who has a prior right to the use of the waters of one creek cannot let those waters run to waste, and use the full amount of his appropriation of the

waters of another creek to the detriment of a junior appropriator on the latter creek; but such junior appropriator cannot, as of right, compel the prior appropriator to exhaust his rights in the former creek before resorting to the use of the latter creek.

Water Rights—Evidence—Cross-examination.

9. Where a notice of appropriation of water filed by a party and testimony given by him are both before the court, it is not permissible to bring out, by a cross-examination of the party, discrepancies between his testimony and the contents of the notice.

*Appeal from District Court, Gallatin County; W. R.. C. Stewart, Judge.*

ACTION by Theodore Norman against A. L. Corbley. From the judgment rendered, and from an order denying a new trial plaintiff appeals. Reversed.

*Messrs. Hartman & Hartman,* for Respondent.

The continuous and uninterrupted use of half of the waters of the creek by respondent, for the period of the statutes of limitations, under a claim of right, and knowledge of that claim and use on the part of the appellant, unquestionably establishes in respondent a prescriptive right, or a right acquired by adverse user, for all that is necessary to make a use adverse is a claim of right in the party using it and knowledge of the claim in the adverse party. (*Forgarty* v. *Forgarty,* 129 Cal. 46, 61 Pac. 570, bottom of page 571.) And where such use has been uninterrupted for the period of the statutes of limitations it ripens into a prescriptive title. (*Bree* v. *Wheeler,* 129 Cal. 145, 61 Pac. 782, 783.) The authorities are abundant upon this proposition, but no case has been found similar in its facts to the one at bar. The closest approach to the principle involved is probably found in the so-called *Agreed Line Cases,* where the courts state the rule thus: "Where coterminous proprietors of land in good faith agree upon, fix and establish a boundary line between their respective tracts of land, which is not the true line, but in which they acquiesce and under which they occupy for a period equal to that fixed by the statutes of limitation, the line so established is binding upon them and those holding under them or either of them; or in

the absence of any express agreement where the boundary has been recognized and the parties have used and occupied according to it for an extensive period, although less than the period of the statutes of limitations, they and all claiming under them will be estopped from afterward claiming a different line." (*White* v. *Spreckels,* 75 Cal. 616, 17 Pac. 715; *Cavanaugh* v. *Jackson,* 91 Cal. 580, 583, 27 Pac. 931; *Cooper* v. *Vierra,* 59 Cal. 282; *Sneed* v. *Osborn,* 25 Cal. 619; *Blair* v. *Smith,* 16 Mo. 273; *Smith* v. *Hamilton,* 20 Mich. 438, 4 Am. Rep. 398.) The same principle underlies respondent's case.

The claim of respondent is that the parties became tenants in common, not of the water rights acquired by their predecessors respectively in 1866 and 1871, but of the waters of Corbley creek each to the extent of one-half thereof, for the purpose of the irrigation of their respective tracts of land and for the domestic purposes of defendant and the watering of his stock. The claim is not that respondent acquired the right claimed, by conveyance from appellant, but by such continuous use with the knowledge and acquiescence of appellant as to ripen into a prescriptive title. The use was a use of half the waters of the creek; prescriptive titles imply lack of conveyance; and the argument of counsel, as to the necessity for a written conveyance as the vehicle of title to water rights, and that water rights constitute real estate, is entirely beside the question. Title to real estate may be acquired by prescription as well as title to water rights, and it is the prescriptive right thus acquired by use that respondent relies upon.

It is immaterial what construction the court below put upon the water right location notice in question. It was simply one of the evidences of the recognition by both parties of their mutual claims to the waters of the creek. Nor is it material how much water was necessary for appellant's use or how much was necessary for respondent's use if they had mutually acquired a prescriptive title to half the waters of the creek. The question as to how much either of them might use or need could only become important as a circumstance in the case

tending to show the mutual use of the water by the respective parties.

*Mr. John A. Luce,* for Appellant.

A tenancy in common contemplates that each of the tenants in common is seised *per my* and not *per tout* and entitled to the possession of the whole. They hold by unity of possession, though their titles be distinct. If this unity is destroyed the tenancy no longer exists. (2 Blackstone's Commentaries, 190-192; *Carpentier* v. *Webster,* 27 Cal. 524.) No such tenancy as this ever arose in this case. (*Wheeler* v. *Ladd,* 40 Ark. 108; *Wiggin* v. *Wiggin,* 43 N. H. 561, 80 Am. Dec. 192; *Lockwood* v. *Mills et al.,* 3 Ohio, 21.) The Norman water right could only pass by a deed of the land or by special conveyance of the water right. (*Sweetland* v. *Olsen,* 11 Mont. 27, 27 Pac. 339; Civil Code, sec. 1510; 2 Am. & Eng. Ency. of Law, 2d ed., 526, 527, and cases cited.) The incident follows the principle, not the principle the incident. (Civil Code, secs. 1491, 4631.)

An estate in real property can be transferred only by operation of law or by an instrument in writing subscribed by the party disposing of the same or by his agent thereunto authorized by writing. (Civil Code, sec. 1500; Code of Civil Proc., sec. 3274.) As between appropriators of water the first in time is first in right. (Civil Code, sec. 1885; *Dunniway* v. *Lawson,* 6 Idaho, 28, 51 Pac. 1032; *Huning* v. *Porter* (Ariz.), 54 Pac. 584.)

The prior appropriator has the right to have the water so appropriated flow down to the point of his appropriation undiminished in quantity or quality. (*Bear River etc. M. Co.* v. *New York Mg. Co.,* 8 Cal. 327, 68 Am. Dec. 325; *Hill* v. *King,* 8 Cal. 336; *Butte Canal etc. Co.* v. *Vaughn,* 11 Cal. 143, 70 Am. Dec. 769; *Phoenix Water Co.* v. *Fletcher,* 23 Cal. 482; *Natoma W. & M. Co.* v. *McCoy,* 23 Cal. 491; *Nevada Water Co.* v. *Powell,* 34 Cal. 109, 91 Am. Dec. 685; *Stein Canal Co.* v. *Kern Island Irr. Co.,* 53 Cal. 563; *Lobdell* v.

*Simpson,* 2 Nev. 274, 90 Am. Dec. 537; *Crane* v. *Winsor,* 2
Utah, 248.) A water ditch and the water right appurtenant
thereto are real property. (*Hill* v. *Newman,* 5 Cal. 445, 63
Am. Dec. 140; *Lower King's R. etc. Co.* v. *Lower King's
etc. Co.,* 60 Cal. 408.) An estate in a ditch and water right
is real property, and an agreement for a conveyance thereof is
within the statute of frauds. (Code of Civil Proc., 1971,
1973; *Smith* v. *O'Hara,* 43 Cal. 371; *Bradley* v. *Harkness,* 26
Cal. 77; *Lower King's R. etc. Co.* v. *King's River etc. Co.,*
60 Cal. 408; Angell on Watercourses, 168-171; Washburn on
Easements, 23, 24; Gould on Waters, 300-321.)

There was no evidence whatever that Norman ever intended
to abandon his priority of right. There can be no such thing
as an abandonment to a particular person. (*Middle Creek
Ditch Co.* v. *Henry,* 15 Mont. 558, 576, 577; *Stevens* v. *Mans-
field,* 11 Cal. 363-366; *McLeran* v. *Benton,* 45 Cal. 467.) The
same irrigation ditch may have two or more priorities belong-
ing to the same party or different parties. (*Thomas* v. *Gui-
rand,* 6 Colo. 530; *Farmers' High Line etc. R. Co.* v. *South-
worth,* 13 Colo. 111, 21 Pac. 1038.) The water right notice
was not necessary and did not add to or take from the priority
of rights by virtue of the respective appropriations of the
plaintiff and defendant. (*Salazer* v. *Smart,* 12 Mont. 395, 30
Pac. 676; *De Necochea* v. *Curtis,* 80 Cal. 397, 20 Pac. 563,
22 Pac. 198; *Burrows* v. *Burrows,* 82 Cal. 564, 23 Pac. 146.)

While there was plenty of water, any acquiescence which
Norman might have made in its use by Corbley could not have
any binding force. (*Church* v. *Stillwell,* 12 Colo. App. 43,
54 Pac. 395; *Boggs* v. *Mining Co.,* 14 Cal. 368; *Lux* v. *Hag-
gin,* 69 Cal. 255-266, 10 Pac. 674; *Anaheim Water Co.* v.
*Semi-Tropic Water Co.,* 64 Cal. 185, 194, 195, 30 Pac. 623.)

MR. COMMISSIONER POORMAN prepared the opin-
ion for the court.

This is an appeal from a judgment and an order overruling
plaintiff's motion for a new trial. The complaint alleges that

the plaintiff is the prior appropriator, and has the prior right to the use of two hundred inches of the waters of Corbley creek, Gallatin county; that the defendant interfered with this right. Plaintiff asked judgment that he be decreed to be the owner of the right to the prior use of two hundred inches of the waters of Corbley creek, and that the defendant be restrained from interfering with this right. The answer of defendant denies that the plaintiff's prior appropriation consists of more than one hundred inches of the waters of said creek, and alleges an appropriation by the defendant; denies also that the defendant had interfered with the plaintiff's rights.

It appears from the facts of the case that the predecessors in interest of the plaintiff in 1866 appropriated certain waters of Corbley creek for the purpose of irrigating certain lands; that the plaintiff afterward succeeded to the rights of the original appropriators, both in the water and in the land; that this water so appropriated has been used on this land continuously since that time; that in 1871 the defendant appropriated certain waters from this same creek for the purpose of irrigating lands then held by him; that the defendant has since occupied said lands and used said water for that purpose; that neither party filed nor recorded any notice of his appropriation until 1885, when, by agreement, they filed one notice, which is in part as follows: "Be it known that A. L. Corbley and Theodore Norman  *  *  *  do hereby publish and declare, as a legal notice to all the world: I. That we have a legal right to the use, possession and control of, and claim four hundred (400) inches of the waters of Corbley Creek in said County and Territory, for irrigating and other purposes. II. [Describes the land on which the water is to be used.] III. That we have taken said water out of, and diverted it from said Corbley Creek by means of two ditches, which said ditches are 72 inches by 48 ditch No. 1, 120 inches by 48 ditch No. 2 inches in size, and carries or conducts 200 each inches of water from said Creek; said Ditch No. 1 taps and diverts the water from said stream at a point upon its South bank 125

feet Northwest from a large boulder marked XX and lying at, or near the mouth of Corbley Canon—said ditch No. 2 taps and diverts the water from said stream at a point upon its North bank 100 feet Northwest of a large boulder marked X being 278 paces above the mouth of said Corbley canon, thence running or to run, to and upon said described land. * * * IV. That we appropriated and took said water on the —— day of June A. D. 1866 as to ditch No. 1 and ditch No. 2 was appropriated the 15th day of June, 1874, by means of said ditches. V. That the name of the appropriator of said water as to ditch No. 1 was Wm. H. Arnold and as to ditch No. 2 A. L. Corbley." It is claimed by the defendant that the date "1874" is error, and should read "1871." Which date is correct is immaterial to the questions presented on this appeal. The court found to the effect that the plaintiff and defendant were tenants in common of the waters of Corbley creek, each to the extent of one-half thereof, and that each of the parties is entitled to the use of one-half the waters of Corbley creek; that the defendant, by the use of one-half the waters of the creek, had not interfered with plaintiff's rights; that the plaintiff was not entitled to maintain this action.

Several questions of law are presented which are conclusive of the case, and will be treated under appropriate headings.

1. The plaintiff filed a motion for judgment on the pleadings, which motion was overruled. The denials contained in the answer required proof on the part of the plaintiff as to some of the material allegations of his complaint, and the motion was properly overruled.

2. Respondent claims that by continual user of one-half of the waters of Corbley creek since 1874 he has acquired a prescriptive right to continue the use thereof. Neither party could acquire any title to the *corpus* of this water, but only to the use thereof. (Civil Code, sec. 1880; *Middle Creek Ditch Co.* v. *Henry et al.,* 15 Mont. 558, 39 Pac. 1054.) So long as the plaintiff had all the water his necessity required, he could not complain, nor raise any question as to the right

of the defendant to use all that remained. "In order to obtain a right by prescription, it is necessary that during the prescriptive period an action could have been maintained by the party against whom the right is claimed." (*Chessman* v. *Hale*, 31 Mont. ——, 79 Pac. 254; *Church* v. *Stillwell*, 12 Colo. App. 43, 54 Pac. 395.) There is no evidence in this record that plaintiff did not have all the water required for his use from the date of its appropriation to the time this dispute arose, and the claim of a prescriptive right cannot be maintained.

3. To sustain the findings of the court it is necessary that there should have been either an abandonment of plaintiff's prior appropriation or a conveyance of an interest therein. "Abandonment is the giving up of a thing absolutely without reference to any particular person or purpose." (1 Cyc. 4.) Neither party could abandon to the other, either with or without a consideration, for that would amount to a sale or gift. Abandonment is a matter of intention. (*Middle Creek Ditch Co.* v. *Henry et al.*, 15 Mont. 558, 39 Pac. 1054; *Wood* v. *Lowney et al.*, 20 Mont. 273, 50 Pac. 794.)

To constitute an abandonment here, it would be necessary that there be an absolute surrender of the rights acquired by the appropriations of 1866 and 1871 or 1874, and the initiation of a new right subsequent to the abandonment. This new right is claimed under the notice of 1885. This notice itself does not contain any evidence of any intention to abandon, but adheres to the original appropriations, and both plaintiff and defendant deny that there was any intention to abandon. There is nothing in this record that sustains any plea of abandonment.

4. To constitute a tenancy in common there must be a right to the unity of possession (17 Am. & Eng. Ency. of Law, 2d ed., 651, and cases), and if this right is destroyed the tenancy no longer exists. With respect to a water right this unity must extend to the right of user, for the parties can have no title to the water itself. The plaintiff's right was initiated

in 1866, and his ditch tapped the creek on the south bank, and extended southwest to the lands irrigated. The defendant's right was initiated in 1871 or 1874, and his ditch tapped the creek on the north bank, and extended northwest to the lands irrigated. Neither piece of land could. be irrigated from the other ditch. The rights acquired by virtue of these former appropriations were vested and complete prior to the filing of this notice in 1885. That notice was not an appropriation, but a declaration relating to former appropriations. Prior to March 12, 1885, no notice of location or record of appropriation was required. The very terms of the Act itself protected prior appropriations. (Comp. St. 1887, sec. 1258, div. 5; *Salazar* v. *Smart et al.*, 12 Mont. 395, 30 Pac. 676.) The recording of that declaration only had the effect of giving notice to the world that these parties claimed certain appropriations. (*Murray* v. *Tingley et al.*, 20 Mont. 260, 50 Pac. 723.) The appropriation claimed by plaintiff was complete in 1866. The evidence is not specific as to the exact number of inches appropriated. Arnold, the original appropriator of the Norman water right, testified that he constructed that ditch in 1866, and that "it carried all the water there was in the creek at that time," and the defendant testified that "four hundred inches is the average flow of this stream, though it varies at times from one hundred inches to six hundred inches."

In the notice of water right filed in 1885 each party concedes that the other's ditch carries two hundred inches, and claims an appropriation of two hundred inches of water carried by each ditch, and they relate this back to the date of the respective appropriations. This is a tacit admission that each of these appropriations was two hundred inches of the waters of Corbley creek; but the Norman appropriation was prior in time to the Corbley appropriation. When, then, did Corbley acquire any interest in this prior appropriation? There was neither abandonment nor waiver by plaintiff of this prior right. The notice of 1885 does not purport to be and is not a conveyance, and there is no evidence of any conveyance, either written or

oral, if an oral conveyance could be made. There is evidence that in 1874 the parties, by oral agreement, and during that season only, used the water alternately; but this was not a conveyance. The defendant also testified that during one season in the early '80's there was a scarcity of water, and he and Mr. Norman used the water half and half; but this was not a conveyance, nor is it evidence that one-half the water was not sufficient for plaintiff's use. It appears from this record that there was not any unity of possession in the ditches, land, date of appropriation, use of the water, or the right to its use, and there is no tenancy in common. (See *Crowder* v. *McDonnell et al.,* 21 Mont. 367, 54 Pac. 43.)

It appears from the evidence that the plaintiff has a prior right to the use of one hundred and twenty-five inches of the waters of Limestone creek, but the defendant cannot, as of right, compel the plaintiff to exhaust his rights in Limestone creek before he can resort to the right of his use to the waters of Corbley creek. This would interfere with the rights of junior appropriators, if there are any, to the waters of Limestone creek, who are not parties to this suit. The plaintiff, it is true, would not be permitted by a court of equity to permit the water of Limestone creek to run to waste, and at the same time use the full amount claimed by him of the waters of Corbley creek, to the detriment of a junior appropriator (section 4605, Civil Code); but this fact would not affect the abstract right of plaintiff, nor destroy the rights acquired by his prior appropriation.

The court, having found that the plaintiff and defendant were tenants in common, did not fix the date of the respective appropriations, but, inasmuch as this theory cannot be sustained, upon the retrial of the case it will be the duty of the court to fix the dates of these respective appropriations by the plaintiff and defendant, and to determine the amount of plaintiff's appropriation. (*McDonald* v. *Lannen et al.,* 19 Mont. 78, 47 Pac. 648.)

The appellant also complains that he was not permitted to cross-examine the defendant more fully regarding this notice of appropriation filed in 1885. From the offer made it appears that the object of this evidence was to show that there was a difference between the testimony of the witness and the contents of the notice of 1885. The evidence for that particular purpose was not admissible, for both the notice and the testimony were before the court, and the court could determine what difference, if any, existed.

We think this judgment and order should be reversed.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment and order are reversed, and the cause remanded.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY, being disqualified takes no part in this decision.

Rehearing denied April 11, 1905.