244 P.2d 785

**HOLMBERG et al. v. BRADFORD et al.**

**No. 5344.**

Supreme Court of New Mexico.

May 23, 1952.

fendants, approximately fourteen in number, comprise and include all of the other shareholders in said community ditch company.

It is not necessary here to summarize the allegations of the complaint and answer because the issues were materially limited by stipulation and agreement of counsel at a pre-trial conference.

Following the pre-trial conference, the material allegations of the complaint appear to be that the sum of approximately seventeen land owners in number own 345 acres of land which were irrigated from waters that flow through the said community ditch. Of this acreage plaintiff C. H. Holmberg owns 119.4 acres, and the other two plaintiffs jointly own 14.7 acres. In other words, the plaintiffs together own 134.1 acres out of the total land they allege to be irrigated by said community ditch, which this Court finds, by mathematical computation, to be 38.87 per centum of the irrigated acreage. The complaint further states that the ownership of said Twin Rocks Ditch Company is represented by seventy shares in interest in the said company, and that the shares in interest are owned by some seventeen persons, including the plaintiffs. All of these persons are either defendants or plaintiffs in the action. Of these seventy shares, the plaintiff C. O. Holmberg is the largest shareholder with eighteen shares; the two other plaintiffs jointly own three shares,

G. W. R. Hoy, Farmington, Johnston Jeffries, Aztec, for appellants.

J. Murray Palmer, Charles M. Tansey, Jr., Farmington, for appellees.

ARLEDGE, District Judge.

The plaintiffs are owners of shares in interest in the Twin Rocks Ditch Company, a community irrigation ditch located in San Juan County, New Mexico. The de-

making a total of twenty-one shares in interest owned by the plaintiffs. This Court, by mathematical computation, determines that the plaintiffs own thirty per cent. of the shares in interest of the said Twin Rocks Ditch Company. The complaint is apparently based upon the theory that each of the land owners is entitled to a share in interest in the community ditch company in proportion to the number of acres irrigated by each land owner from the waters of said ditch.

The principal prayer for relief prays that the Court issue a mandatory injunction commanding the defendants to "make a proper apportionment of shares in defendant ditch company to each of the respective owners of land irrigated by waters from said Twin Rocks Ditch, in proportion to the amount of land each respective shareholder has (irrigates with water from said ditch), and that the records of said Twin Rocks Ditch Company be made to show such proportioned shares to each respective shareholder therein." (The words in parenthesis are supplied by this Court to correct an obvious clerical error in the prayer for relief).

The order of the trial court recited that it was made following pre-trial conference, and sustained the defendants' motion to dismiss, said motion to dismiss being in the nature of a demurrer. The order of the trial court reads as follows:

"The above styled cause having come on for hearing at a regular term of court, plaintiffs being present and appearing by and through their attorney, G. W. R. Hoy, and defendants being present and appearing by and through their attorneys, J. Murray Palmer and Charles M. Tansey, Jr.:

"1. The defendants having renewed their written motion heretofore filed in said cause to dismiss the plaintiff's complaint, and it having been agreed at a pre-trial conference heretofore held in said cause and ruled by the Court in said pre-trial conference that the only issue remaining before the Court for decision is the issue as to whether or not the Court can by its judgment and decree increase, decrease, change, or vary the shares of ownership in a community ditch upon the allegations contained in plaintiff's complaint, and the Court finds:

"a. That the Twin Rocks Ditch Company is a community ditch and that the plaintiff and defendants are the share holders and owners in said community ditch as tenants in common.

"b. That the ownership in a community ditch is a property right and such ownership is a right separate and apart from the water rights of the individuals using such ditch.

"c. That the Court based upon the allegations in plaintiff's complaint as a

matter of law has no right to vary, add to, or take away the shares of interest and ownership of the shareholders in the Twin Rocks Community Ditch.

"Therefore the Court hereby sustains the written motion of the defendants, heretofore filed in said cause, to dismiss the plaintiff's complaint, and the complaint of the plaintiff is herewith dismissed."

From this order of the trial court sustaining the motion to dismiss, plaintiffs have appealed, contending that the court committed error as a matter of law. Defendants have filed a cross-appeal. But if the ruling of the trial court was correct on this point, it is not necessary to consider any of the other issues raised by the appeal or by the cross-appeal.

The pleadings indicate that the Twin Rocks Ditch Company has existed prosperously and usually peacefully for some sixty years; that it conveys water out of a stream in Colorado into New Mexico; that two persons owning three shares in interest in the company are residents of Colorado and irrigate land in Colorado; and that the plaintiff C. O. Holmberg was, until recently, the Chairman of the Board of Trustees of the community ditch company.

Section 77–1407, N.M.S.A.1941 Comp., same being Chapter 30 of the Laws of 1882, reads as follows:

"Ownership of ditches—Use of water—Payment.—All acequias, public or private, when completed, shall be the property of the persons who may have completed such acequias or ditches, and no person or persons who may desire to use the waters of such acequias or ditches shall be allowed so to do without the consent of a majority of the owners of such acequias or ditches, and upon payment of a share proportionate to the primary cost of such acequia or ditch to the amount of the land proposed to be irrigated, or the quantity of water proposed to be used: Provided, that the provisions of this section shall not apply to any acequias or ditches, public or private, that may pass from the limits of any one county to within the lines of any other county."

On the basis of the foregoing statute it would appear that the rights of ownership of the ditch are rights separate and apart from the rights of ownership of water that the ditch conveys. The community ditch in this case is only the carrier. Any new land owner, or any land owner who has increased the number of his acres of irrigable land, wishing to carry water through an established ditch, can do so only by consent of the owners of the shares in interest in the ditch company, and by payment to the ditch company of a price proportionate to the pri-

mary cost of the ditch, based upon the amount of water to be carried. It would appear that the new land owner, or the land owner who has additional or enlarged acreage that could be irrigated from the community ditch has absolutely no right to an additional interest or ownership in the ditch until he has secured the consent of the majority of the owners of said ditch, and has arranged to pay for additional carrier space in the ditch. The New Mexico statute, which apparently grew out of customs of the early settlers, recognized only two methods of acquiring a right of property in a community irrigation ditch: The first was by the initial joinder of the land owners in the construction of the ditch each contributed in cash or labor, or both, to such construction; the other is by the method of consent and purchase above referred to.

■ Section 77–1414, N.M.S.A.1941 Comp., the same being Chapter 1 of the Laws of 1895, reads as follows:

"Ditch elections—Qualifications of voters—Method of voting.—The election for acequia or community ditch officers under this article shall be held by the outgoing commissioners under rules and regulations to be prescribed by them. Only those having water rights in the acequia or ditch and who are not delinquent in the payment of their assessments, and fail to proffer such delinquent assessment at the time they offer to vote, shall be allowed to vote; but votes may be cast by written proxy and shall be in proportion to the interest of the voter in the ditch or water, or in proportion to the number or amount of his water rights."

Although there is some language in this latter statute regarding methods of voting which might conflict with the method of voting the shares in interest of the owners of the community ditch acquired under the 1882 Law, we believe that the 1895 Law merely provides two alternative methods of voting, and it does not destroy any property rights which the 1882 statute recognized. The 1895 statute in no way compels us to grant the relief which plaintiffs seek here.

In the 1914 New Mexico case, Snow v. Abalos, 18 N.M. 681, at page 696, 140 P. 1044, at page 1049, this Court attempted to clarify the distinction between water rights and shares of interest in a community ditch, set out as follows:

"Appellees have cited us to section 62, Black's Pomeroy on Water Rights, where the author says: 'Whenever ditches or other structures for diverting or appropriating water belong to two or more proprietors, such owners are, in the absence of special agreements to the contrary, tenants in common of the ditch, and of the water rights connected therewith, and their proprietary rights are governed by the rules

of law regulating tenancy in common'—and also refer to the cases of St. Anthony Falls Water-Power Co. v. City of Minneapolis, 41 Minn. 270, 43 N. W. 56; Bradley v. Harkness, 26 Cal. 69; Lytle Creek Water Co. v. Perdew, 65 Cal. 447, 4 P. 426. The learned author and the courts, we believe, erroneously consider the water rights attached to the ditch, which of course is owned by the parties constructing it as tenants in common, whereas said water rights are appurtenant to the lands owned in severalty by the parties. The ditch is simply the carrier, or agency employed by the parties, to conduct the water, the right to which is appurtenant to the land, to be irrigated. Suppose, for example, that two farmers each owned a farm; their lands being contiguous. In order to reach their lands they should jointly construct a wagon road to the same. The road would be owned by the parties jointly or as tenants in common. Each would have the right to use the road. The fact that they haul their produce raised on the farm over the wagon road thus constructed would not make them tenants in common of the crops so hauled. However, if they should, for instance, mix their grain together, for the purpose of hauling it to market, they would of course be tenants in common of the grain so commingled.

"In the case of Norman v. Corbley, 32 Mont. 195, 79 P. 1059, this principle is applied by the Supreme Court of Montana. The Court say: 'To constitute a tenancy in common there must be a right to the unity of possession (17 Am. & Eng.Enc. L.2d Ed. 651, and cases), and if this right is destroyed, the tenancy no longer exists. With respect to a water right this unity must extend to the right of user, for the parties can have no title to the water itself.'"

In Parke v. Boulware, 7 Idaho 490, 63 P. 1045, 1047, the Supreme Court of Idaho expressed a similar view of the law, stating:

"The law is well settled in this state that a ditch may be owned separately from a water right, and a water right separately from a ditch. If the appellant is the owner of the ditch and the dams described in the complaint, the respondents have no legal right to interfere therewith in any manner, and have no right to run water through said ditch, except as hereinbefore stated, although a part of said ditch is composed of a slough or high-water channel."

In Wiel on water rights, Vol. 1, p. 482, the learned author states:

"The water right itself, as a flow and use, is not an easement. It is a thing in itself, not a servitude upon some other thing; whereas the right to a ditch or other artificial water course is an easement."

 Section 77–1411, N.M.S.A.1941 Comp., Chapter 1 of the Laws of 1895, by its provision declares: that community ditches are constituted as bodies corporate. It would therefore appear that the defendant in this cause, the Twin Rocks Ditch Company, a community ditch corporation, by its being a body corporate owns a community ditch which is in effect an easement for the purpose of transporting water; that the other defendants in this cause own shares in interest in said community ditch corporation, and that plaintiffs' contention that the courts of this state should readjust the shares in interest in said community ditch corporation in proportion to the water rights of the land owners using said ditch, or in proportion to the number of acres irrigated by each land owner using said ditch, is not a valid contention of law. The contention of the plaintiffs, in effect, asks this Court to strike down the letter and spirit of the cited 1882 statute of this state, and, in effect, asks this Court to destroy vested property rights and create new property rights this Court cannot legally or constitutionally do.

Finding no error in the order of the learned trial judge in sustaining defendants' motion to dismiss, the decision of the trial court will be affirmed.

It is so ordered.

LUJAN, C. J., and McGHEE, COMPTON and COORS, JJ., concur.

SADLER, J., not participating.