[No. 12348. Department Two. July 20, 1915.]

WILLIAM DONTANELLO, *Appellant*, v. ADOLPH A. GUST *et al.*, *Respondents.*[1]

WATERS AND WATER COURSES—ADVERSE USE—TITLE—EXTENT OF RIGHT. The right to the use of flowing waters may be acquired by prescription, resulting in the vesting of title as if acquired by deed, the extent of the right depending upon the nature and character of the adverse uses.

SAME—ADVERSE USE—BY LOWER PROPRIETOR—TITLE—EVIDENCE—SUFFICIENCY. While generally the use of waters by a lower proprietor is not adverse, title to the waters of a spring is acquired by a lower proprietor, where, during the entire statutory period, he infringed upon the rights of an adjoining owner by constructing a ditch, dam and an intake on such other's land, below the spring, at the closest practicable point, and conducted the waters through the ditch to his own land for irrigation purposes, claiming the right to the waters under a posted notice, and during which times the adjoining owners might have maintained an action for the unlawful invasion of their property.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered April 16, 1914, upon findings in favor of the defendants, in an action to quiet title, tried to the court. Reversed.

*Wende & Taylor*, for appellant.

*Englehart & Rigg* and *Linn & Boyle*, for respondents.

MAIN, J.—The purpose of this action was to quiet title which it was claimed had been acquired by prescription to

[1]Reported in 150 Pac. 420.

the right of way for an irrigation ditch and the waters of a spring which flowed into the ditch. After the issues were framed, the cause was tried to the court sitting without a jury. A judgment was entered quieting the title to the right of way for the ditch, and a strip of land ten feet wide on either side of the center line thereof, but denying the right of the plaintiff to have the title to the spring quieted in himself. From this judgment, the plaintiff prosecutes the appeal.

The facts are substantially as follows: The appellant is the owner of the southeast ¼ of the southeast ¼ of section 26, twp. 11 N., R. 23 E. W. M. The respondents are the owners of the northeast ¼ of the southeast ¼ of section 26, and the northwest ¼ of the southwest ¼ of section 25, in the same township and range. The appellant's land consists of approximately 40 acres, is arid, and is not adapted to profitable farming without irrigation. On the northwest ¼ of the southwest ¼ of section 25, there is a water course which flows in a southwesterly direction, crossing the land owned by the appellant. This water course is fed by a spring, and intermittently by rains and the melting of snow. The spring is located in a canyon on the northwest quarter of the southwest quarter of section 25. The walls of the canyon are from 12 to 15 feet in height. The spring flows continuously throughout the year.

During the year 1891, the appellant filed a claim to the waters of the spring and the right to conduct the same through an irrigation ditch. Notice of this claim was posted at the spring. During the year 1892, the appellant constructed an irrigation ditch for the purpose of carrying all waters from this spring to his land, there to be used for irrigation purposes. Across the canyon, at about 250 feet below the spring, a dam was constructed. At this dam, was the intake for the ditch. The ditch extended in a southwesterly direction and ended upon the appellant's land. The dam and

intake were constructed at the closest practicable point to the spring.

During the farming season of 1892, and every year thereafter, the appellant has taken the water of the creek into the ditch at the intake to the full amount of the flow of the ditch, and has conducted the water thence through the ditch by gravity to and upon his land for irrigation purposes; and in the year 1892, and every year thereafter, he has irrigated and grown to maturity crops of hay, fruits, etc. To facilitate the unobstructed flow of the stream between the spring and the intake, the appellant each and every year has removed from the stream sage brush and willows which would accumulate there, and other obstructions.

The trial court found that the appellant, by adverse user, had acquired the right to divert all waters which came down the water course to his intake, and had acquired an easement for his ditch upon the land it covers, and ten feet on either side of the center line thereof, but that the appellant had acquired no easement in that part of the creek above his intake, or upon any of the lands above the intake, and that the appellant had acquired no prescriptive right to the use of the water of the spring for the irrigation of his lands, save and except as to the water which might reach the intake of his ditch. The respondents filed no exceptions to the findings and conclusions of the trial court. The facts, however, are not in dispute in any material respect.

The question presented upon this appeal is whether the appellant acquired the right to the waters of the spring, as well as the right to take from the water course all water which came to his dam and intake. The right, if it existed, had been acquired by adverse user. It is a recognized doctrine that rights to the use of flowing waters may be acquired by prescription. *Mason v. Yearwood*, 58 Wash. 276, 108 Pac. 608, 30 L. R. A. (N. S.) 1158; *Farwell v. Brisson*, 66 Wash. 305, 119 Pac. 814; *Sander v. Bull*, 76 Wash. 1, 135 Pac. 489. The extent of the right which may be acquired to waters by

adverse user is determined from the nature and character of the adverse user on which it is founded. *Wutchumna Water Co. v. Ragle*, 148 Cal. 759, 84 Pac. 162. Where the right has been acquired by prescription, it results in vesting title in the claimant to the same extent as if the right had been conveyed by deed. In 2 Kinney, Irrigation and Water Rights (2d ed.), § 1057, it is said:

"The effect of a right acquired by prescription is to vest in the claimant the title to the same as completely as if conveyed to him by deed from the original owner. And, as stated in a previous section, there is a fiction of law indulged in that he acquired his title in this manner. In other words, there is a presumption that the original owner granted the right to the claimant. . . ."

From the facts stated, it appears that the appellant is a lower owner. In other words, that the water flows to his land by gravity. The general rule is that a lower owner cannot acquire title to water by adverse user. 1 Weil, Water Rights (3d ed.), § 588, p. 637; *Allen v. Roseberg*, 70 Wash. 422, 126 Pac. 900. This general rule is founded upon the fact, which is generally present, that a lower use cannot be adverse. In order that title to waters may be acquired by adverse user, it is necessary that, during the entire statutory period, there shall have been an infringement upon another's right to such an extent that such other would have had a cause of action against the claimant. *Davis v. Chamberlain*, 51 Ore. 304, 98 Pac. 154; *Perry v. Calkins*, 159 Cal. 175, 113 Pac. 136; *Ison v. Sturgill*, 57 Ore. 109, 109 Pac. 579, 110 Pac. 535; *Smith v. Duff*, 39 Mont. 374, 102 Pac. 981, 133 Am. St. 582.

Applying these rules to the facts in this case, we are of the opinion that the appellant acquired title to the waters of the spring. The purpose of constructing the ditch, dam, and intake was not primarily for the purpose of taking such waters as might come down the water course, but for the purpose of acquiring the waters of the spring. The intake was placed

a short distance below the spring at the closest practicable point. At all times after the construction of the ditch and before the right of the appellant had been acquired by prescription, the respondents and their predecessors in interest could have maintained an action against the appellant for unlawfully invading their property, and have prevented the use of the ditch. If the respondents can now by any means divert the water between the spring and the intake, the appellant's dam and ditch would become practically useless. The appellant at all times claimed the water from the spring, and his purpose was to acquire a right thereto. While the notice which he filed and posted was not sufficient in law, to give him a right to the waters, it yet is material as showing the extent of the right which he claimed. *Gardner v. Wright*, 49 Ore. 609, 91 Pac. 286.

The right which is acquired by adverse use of the water of a stream is measured by the extent to which the claim was asserted and maintained. In other words, no greater right will be acquired than that which flows from both the use and the claim. 2 Farnham, Waters, § 542. Had the appellant's rights been founded upon a deed to take the waters from the stream at the point at which his intake was placed, it will hardly be doubted that he would have acquired the right to the waters of the spring. That the use of a lower owner may be adverse to that of an upper, and thus be the foundation for the acquisition of a right by prescription, is recognized in *Allen v. Roseberg, supra,* where it is said:

"The respondent contends that there can be no adverse use by a lower proprietor as against those above, since the use below is no interference with, and hence no possible invasion of the rights of the upper owner; citing Weil on Water Rights (3d ed.), p. 635, and other authorities. It is no doubt true that a lower use is, as a general rule, in its very nature not adverse. But this rule is applicable in its full sense only as between upper and lower riparian proprietors, and only where the lower use does not interfere with the upper. . . ."

In sustaining the appellant's right to the waters from the spring, it has not been necessary in this case to go as far as in the case of *Mason v. Yearwood, supra.* To deny the appellant the right to the waters of the spring in this case would require the overruling of that case. The judgment is reversed, and the cause remanded with direction to enter judgment in favor of the appellant.

MORRIS, C. J., ELLIS, FULLERTON, and CROW, JJ., concur.