[No. 17491.   Department One.   January 2, 1923.]

W. L. SMITH, *Respondent*, v. JOSEPH NECHANICKY *et al.*,
                    *Appellants.*[1]

WATERS AND WATER COURSES (1)—WATERS OPEN TO APPROPRIATION. There being no right of appropriation of waters in this state except as against public lands, the filing of notice of appropriation has no effect as to land previously granted by the government to the Northern Pacific Railway Company.

SAME (26)—RIPARIAN RIGHTS—EXTENT OF RIGHT TO USE WATERS. Riparian ownership of lands gives no right to the use of the waters of a stream to the exclusion of others, but the right is limited to the reasonable use and is mutual.

SAME (37)—RIPARIAN RIGHTS—DIVERSION—PRESCRIPTIVE RIGHTS. A prescriptive right to the use of the water of a stream for irrigation cannot be established without open, notorious, exclusive, hostile and continuous possession for a period of ten years; and adverse use of a lower riparian owner is not established by his going upon upper lands to clear obstructions from the stream, where this was below, and did not interfere with, the upper appropriator's diversion and use of the water that he needed.

Appeal from a judgment of the superior court for Lincoln county, Sessions, J., entered April 15, 1922, upon findings in favor of the plaintiff, in an action to determine the right to the use of a stream for irrigation, tried to the court.   Reversed.

*Freece & Pettijohn,* for appellants.

*Wm. M. Nevins,* for respondent.

MACKINTOSH, J.—The appellant is the owner of property in section 7, township 22, N. R. 34 E.   The respondent is the owner of the north one-half of section 13, township 22, N. R. 33 E.   The appellant's land was granted by the United States government to the Northern Pacific Railway Company in 1864, and in October, 1880, the railway company filed its map of definite

[1]Reported in 211 Pac. 880.

location, covering section 7, and in May, 1901, deeded the property to Emmert, who, in December, 1904, conveyed it to Habenschield, who, in June, 1913, conveyed it to the appellant. The respondent's land was also granted to the Northern Pacific Railway Company in the same manner as the land of the appellant. About 1885 the railway company deeded it to one Gilpin, and in 1890 Gilpin conveyed it to the respondent, who has since owned and occupied it.

Duck Lake Creek flows in a southwesterly direction through the portion of Lincoln county where these lands are situated, and passes through section 8, township 22, N. R. 34 E. in a generally westerly direction, and comes into the southeast quarter of section 7 not far from the N. E. quarter-section corner, and passes through the S. E. quarter in a southwesterly direction, leaving the S. E. quarter near the S. W. quarter-section corner; then passes through section 8 and comes into section 13 near the N. E. corner of the section and passes through respondent's land in a southwesterly direction. This action was begun to enjoin the appellant from in any way interfering with the flow of this creek. The appellant, in his answer to the complaint, interposed a cross-complaint in which he asserted the right to use the water of this creek for irrigation and domestic purposes, as he claims his predecessors had used it for some sixteen years or more. The respondent asserts three claims based upon, first, prior appropriation, second, riparian rights, and, third, prescriptive use. The trial court found against claims one and two, but awarded respondent a decree in conformity with his third claim.

The testimony of the respective parties is to the following effect: The respondent contends that his testimony showed that, while Gilpin was in possession of

section 13, he had used almost all the water of the creek for domestic and irrigation purposes; that Gilpin filed a claim to the water of the creek; that Gilpin and Smith had always publicly declared their ownership of the waters naturally flowing in the creek, and were generally reputed such owners; that Smith had openly and notoriously claimed all the water of the creek in good faith, believing that he had purchased such water rights from Gilpin; that Habenschield, when he was the owner of section 7, used the waters during the months of April and May only, and at a time when respondent did not need them for irrigation; and that, during the balance of the irrigation season, Habenschield was deprived of the use of the water, although at such times he was greatly in need of it; that the ditch used by Habenschield which began in section 8 and took the water out of the creek in that section and led it into section 7 was made under the direction of the respondent; that the respondent had openly controlled the creek as it flowed through section 7 since 1893, and that since that time he has cleaned and repaired the channel on various occasions and removed all obstructions in section 7 and in section 8 in order that he should obtain the full flow of water during the irrigation season from May to October; that the ditch running across the line between sections 7 and 8 was used by Habenschield only when the respondent was in no need of the water; that when respondent was in need of the water Habenschield would always let him have it with the exception of one time when, in order to get the water, respondent tore out a dam in the creek in section 8 (this occurred in 1904); that an obstruction placed by Habenschield in section 7 had been made with the permission of the respondent, and that the testimony generally shows that at no time had the right of respondent to the uninterrupted use of the

creek or his superior right to it been disputed from the time he went into possession of section 13 until this law suit was commenced.

The appellant contends that his testimony showed that, for more than twenty years preceding the commencement of the action, the appellant and his predecessor had irrigated some three to five acres of orchard and garden land on section 7, and twenty acres of grass; that the water was used by Habenschield in the spring and all summer through the ditch already referred to whenever it was needed; that the appellant subsequently to 1913, when he acquired the property, irrigated his property in section 7 during June, July, August and September of each year, and that this was done by him up to and including 1916; and that after that date the sons of the appellant, who then had charge of the place, irrigated from time to time. The immediate cause of the institution of this action was the construction in section 7 of a swimming pool dam by some boys, which interfered with the flow of the water from section 7 into section 13, which dam, the testimony shows, was not constructed by the appellant or with his consent and has since been removed, and is of no interest in this action except as having been the cause of its being instituted.

Considering the claims of the respondent in the order in which we have arranged them above:

First, the question of prior appropriation.

The claim filed by Gilpin was of no effect, there being no law at the time he made his attempted filing, permitting him to acquire rights in that manner. The Northern Pacific Railway, the original grantee from the government, took title to both sections affected here prior to any claim of appropriation of water for use on the lands now owned by respondents, and under the holdings of this court no appropriation after the

passing of the title to the railway company could be made, we having held there can be no appropriation of water in this state except as against public lands. *Sander v. Wilson,* 34 Wash. 659, 76 Pac. 280; *Sander v. Bull,* 76 Wash. 1, 135 Pac. 489.

Second, riparian rights.

The common law doctrine of riparian rights is the rule established in this state. But under this doctrine the riparian owner cannot use all the water of the stream to the exclusion of other riparian owners merely from the fact of his riparian ownership. Such ownership does not give one the right to make an unreasonable use of the water, the rights of all being mutual. *Benton v. Johncox,* 17 Wash. 277, 49 Pac. 495, 61 Am. St. 912, 39 L. R. A. 107; *Nesalhous v. Walker,* 45 Wash. 621, 88 Pac. 1032.

In *Hough v. Taylor,* 110 Wash. 361, 188 Pac. 458, we held that independent of the question of prior appropriation upon public lands, riparian rights are not to be disturbed. It is therefore apparent that the trial court was correct in holding that respondent was not entitled to a decision upon the doctrine of riparian ownership.

Third, prescription.

In order for the respondent to succeed upon the theory of prescription, he must show that he had adversely possessed the water in the stream for the statutory period of ten years, and that that possession has been open, notorious, exclusive, hostile and continuous. The question immediately presents itself whether a lower riparian owner can ever acquire title by adverse possession—prescription—to water as against a riparian owner higher up on the stream. Some text books and cases lay down the rule that such a prescriptive right cannot be obtained, but the law seems to be, however, that such a prescriptive right may be obtained,

but it is only by the actual interference with the rights of the upper riparian owner. If the respondent has failed to show all the elements which we have set out as being necessary to the acquisition of title by prescription, such title must be denied him.

In *Barnes v. Belsaas,* 73 Wash. 205, 131 Pac. 817, we held that the defendants having not continuously for a period of ten years deprived the plaintiff of any water to which he was entitled, did not give the defendants a right to prescription, although they may have trespassed upon the plaintiff's lands. In this case, the respondent has not established to our satisfaction that he had the uninterrupted use of the water of the stream to the exclusion of the appellant during the period of ten years; for the testimony shows that, since 1900, the appellant has used such water as he needed to irrigate the land which we have above described. Moreover, the testimony does not convince us that the use of the water by the respondent has been hostile, for it has not been adverse. The question of whether it has been continuous is not necessary to determine, although the respondent contends that continuous does not mean hourly use, but it is sufficient if it was used when necessary. The testimony of the going upon the property of the appellant for the removing of obstructions and keeping the bed of the stream clear, as we read it, refers very largely, if not entirely, to a clearing of the stream below the point where it was used by the appellant on section 7, and was not in any way an interference with the appellant's use through the ditch or intake which was on section 8. The occasion in 1904 when the respondent removed the dam at the intake in section 8 is the only act of interference, as far as we can discover in the evidence, which the respondent did in conflict with the appellant's use of the water through that ditch; but even assuming that that was an inter-

ference with the appellant's rights, still, there was a user from 1904 until 1916, which was the full prescriptive period and which would entitle the appellant to his title by such user. We are satisfied from the testimony here that the lower use by the respondent was not adverse to the higher use by the appellant.

The cases from this court in which a lower riparian owner has been allowed a prescriptive right against a higher riparian owner are readily distinguishable from the facts of the case at bar. In *Dontanello v. Gust,* 86 Wash. 268, 150 Pac. 420, the water was taken from a spring which was located on the defendant's land. The plaintiff constructed an irrigation ditch to take all of the water from this spring to his own land. The intake was upon, and the ditch was constructed across, defendant's land, and for more than the prescriptive period the plaintiff took all the water of the spring by means of this intake and through this ditch across defendant's land and on to his own. The court said that, during the prescriptive period, the plaintiff might have maintained an action against the defendant for unlawfully invading his property, and might have prevented the use of the intake and the ditch; and held that plaintiff in that case, having gone on the lands of defendant and taken water from the defendant's own premises for a period of more than ten years, had acquired a right by prescription to continue so to do. The facts of the present case do not meet that situation, for here the respondent is not depriving the upper owner of the use of any water which he desired to use, nor could the upper owner at any time have enjoined the respondent from doing any of the acts which he may have performed, leaving aside the one incident in 1904. The removing of the obstruction in the stream was a matter which was not an invasion of any of appellant's rights but were things which the respondent had a right to do

in order that the stream might flow to him in the most satisfactory way, and did not interfere with any use of the stream by the appellant.

The case of *Mason v. Yearwood,* 58 Wash. 276, 108 Pac. 608, 30 L. R. A. (N. S.) 1158, was another case in which a prescriptive right was allowed to a lower riparian owner who, for a period of more than twenty-five years, had gone upon the lands of the defendants and had taken water from those lands through ditches, a situation entirely different from the one at bar.

In *Allen v. Roseburg,* 70 Wash. 422, 126 Pac. 900, another prescriptive right was acquired, the court holding that it was plain there had been an interference which gave rise to an adverse user, and that such interference could have been stopped by the persons against whom the prescriptive right was acquired, had they moved within the statutory time.

We are satisfied that the decree was improper, and that one should be entered in favor of the appellant on his cross-complaint, giving to him the right to use the stream for irrigation purposes on his land in section 7 in an amount sufficient to irrigate not less than three acres of garden and orchard and twenty acres of grass, to the same extent and in the same manner as that right has been enjoyed prior to 1916.

Judgment reversed.

PARKER, C. J., BRIDGES, HOLCOMB, and MITCHELL, JJ., concur.