BOEHLER, APPELLANT, *v.* BOYER ET AL., RESPONDENTS.

(No. 5,612.)

(Submitted February 17, 1925. Decided March 9, 1925.)

[234 Pac. 1086.]

*Water Rights—Title by Prescription—Adverse User—Essentials—Evidence—Insufficiency—Burden of Proof—Place of Measurement of Water.*

Water Rights—Adverse User—Essentials.
    1. To constitute the user of water "adverse," it must have been an invasion of the right of the party against whom it is asserted,—the claimant must prove by a preponderance of the evidence not only that his use has been open, notorious, continuous, adverse and exclusive and under a claim of right for the statutory period of ten years, but that the party against whom it is set up had need of the water during that period and that the use was such that the latter could at all times have maintained an action against him.

Same—Adverse User—Evidence—Insufficiency.
    2. Testimony that a party relying upon an adverse user of water always used all the water he needed and that no one ever objected to such use is not sufficient to establish adverse user, in the absence of a showing that the party against whom it was asserted had need of the water at the time the claimant was using it.

[72 Mont. 472.]

Same—Adverse User—Burden of Proof.

3. The burden of proving an adverse user of water rests upon him who alleges it.

Same—Gravelly Soil—Award of Two Inches Per Acre Justified.

4. Where land was rocky and gravelly and little use could be made of a less quantity of water than that furnished by an irrigating head an award of two inches per acre was justified.

Same—Place of Measurement of Water.

5. In the absence of a rule as to where in adjudicating a water right the court shall direct measurement to be made, a decree directing the water to be measured half a mile below the head of the ditch of the party to whom it is awarded instead of at the point of diversion, was not error.

*Appeal from District Court, Sanders County; Theodore Lentz, Judge.*

SUIT by Floyd W. Boehler against Frank Boyer and others. From a judgment for defendants, plaintiff appeals. Remanded, with directions to modify judgment, and, as modified, affirmed.

Cause submitted on briefs of Counsel.

*Mr. Harry H. Parsons,* for Appellant.

*Mr. A. S. Ainsworth,* for Respondent.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is an action to determine the respective rights of the parties, with their priorities, in and to the waters of Lynch Creek, in Sanders county.

The complaint alleges ownership in appellant of 853 acres of land, lying immediately north and above the lands of respondents, of which 110 acres are tillable and capable of being irrigated from Lynch Creek; appropriation of water from said creek in 1882, constituting the first right on said creek, and interference therewith, and that the lands in question require a minimum of one miner's inch to the acre throughout the irrigating season, which extends from April to October in each year. The prayer for relief asks a decree

for 114 inches of water from said stream, prior to any rights of respondents.

The answer denies all of the allegations of the complaint, except as to the ownership of the land, and alleges affirmatively the appropriation of all of the waters of the stream in 1870, the continuous use of and the right thereto.

By stipulation it was agreed, on the trial, that either party might set up adverse possession and user as though the same had been specifically pleaded.

The proof showed appellant's appropriation as of September, 1882, that he had 110 to 115 acres under cultivation, and that one inch to the acre was sufficient for the irrigation of his lands. There was no showing that any greater area than that under cultivation could be irrigated from the stream in question. The proof further shows that the respondents had approximately thirty-five acres under cultivation and susceptible of irrigation from this stream; and that owing to the nature of the soil, this land required two inches to the acre.

The trial court, by its findings and decree, gave to appellant a right to one and one-half inches to the acre for 120 acres, or 180 inches of the waters of the stream, as of September, 1882, and to respondents two inches to the acre for thirty-five acres, or seventy inches, as of June 20, 1890. The court then found that the respondent Boyer, through whom all of the respondents claim rights, "has used said water continuously, peaceably, adversely, openly and notoriously and under a claim of right, hostile to all the world and particularly to the plaintiff and his predecessors in interest for more than thirty years." And on this last finding concluded as a matter of law that, as to the plaintiff (appellant) the respondents' rights are first, and in its decree provided that: "The rights of the defendants herein to the use of the waters of the Lynch Creek for irrigation and beneficial use upon their respective tracts of land are equal as to time, and as to plaintiff said rights are first."

The court further found and decreed that respondents' water shall be measured at the line between the lands of appellant and those of respondent Boyer, which point is, according to the testimony, approximately half a mile below the head of Boyer's ditch.

Appellant contends that the court erred (1) in finding and giving decree to the effect that appellant had lost his prior right by adverse possession and in awarding to respondents seventy inches of water prior in right to appellant; (2) in granting respondents two inches of water to the acre, and (3) in fixing the place of measurement at the dividing line instead of at the point of diversion.

The undisputed facts in the record are: That the stream in question rises in springs near the north line of appellant's land and flows in a southerly direction through the same and on to the lands of respondent Boyer; that near the appellant's residence are other springs in or near the channel of the creek and yet others near the southern line or boundary between the two places; that the upper or "head" springs dry up in dry seasons in the months of July and August, and in other seasons flow somewhat later; that one Peter Deemer located on portions of appellant's land in 1882, while respondent Boyer located on his lands on June 20, 1890, and later sold small tracts thereof to the remaining respondents; that while Deemer took out water in 1882, this was done through the ditch now known as the Boyer ditch, the Boyer lands having been occupied by a succession of settlers without title, but who diverted water and cultivated portions of the Boyer lands continuously since the early seventies; that in 1896 one McGowan, grantee of Deemer and grantor of appellant, constructed a ditch tapping the creek near appellant's residence and extended it to connect with the old ditch at a point lower down, and exchanged this ditch with Boyer for the upper portion of the old ditch, the lower ditch constituting a change in point of diversion of Boyer's right and through which he now claims his water; that appellant has approximately

110 acres of land under cultivation, which is all of his land susceptible of irrigation from the stream, and that one inch to the acre is sufficient to irrigate it, while respondents have approximately thirty-five acres under cultivation, requiring, by reason of the nature of the soil and the small areas irrigated, two inches to the acre for its irrigation; that during all of the times mentioned, appellant and his predecessors in interest knew of the Boyer use, which includes that of the other respondents, and at no time, up to a short time before the commencement of this action, did anyone dispute such use.

1. Adverse possession and use: Respondents' counsel cites the cases of *Hays* v. *De Atley*, 65 Mont. 558, 212 Pac. 296, and *Glantz* v. *Gabel*, 66 Mont. 134, 212 Pac. 858, as authority for the position that: "When the claimant's use has thus been open, visible, continuous, unmolested and under a claim of right [for a period sufficient to satisfy the statute of limitations] the corollary is that it has been adverse to the owner." These cases, however, had to do only with the acquisition of ditch rights. Here there is no question as to the ownership of the ditch through which respondents take their water; that ditch belonged, at all times mentioned, to respondent Boyer.

While the use described in the above quotation is sufficient [1] to constitute adverse use of a ditch, because it would necessarily be an invasion of the rights of the owner of the ditch, such a deduction does not follow from a like use of water through separate ditches and where each party is claiming the right to use the waters of the stream. There may be a sufficient flow of water in the stream during all of such period to satisfy, or more than satisfy, the requirements of both and, therefore, the use by one be no invasion of the rights of the other. In order to constitute adverse user, an invasion of a right must be shown, from which a grant may be presumed.

The question was disposed of in the case of *Smith* v. *Duff*, 39 Mont. 374, 133 Am. St. Rep. 582, 102 Pac. 981, where this court said: "Proof of the mere use of the water during the statutory period is not sufficient. It is necessary that during the entire period an action could have been maintained against the party claiming the water by adverse user by the party against whom the claim is made. [Quoting Long on Irrigation, sec. 90.] No adverse user can be initiated until the owners of the superior right are deprived of the benefit of its use in such a substantial manner as to notify them that their rights are being invaded."

The above was quoted with approval and as the basis of the text on the elements of adverse user affecting water rights, in 27 R. C. L. 1291, section 203, as follows: "The mere use of water for the prescriptive period is not sufficient of itself to confer prescriptive title; the use must be adverse. Otherwise it can never ripen into a prescriptive title no matter how long continued. And before a use can be adverse in the sense of this rule, it must be an invasion of the rights of the party against whom it is set up, of such a character as to afford him grounds of action, that is to say, it is the fact that the claimant has been exposed to an action which the opposite party has neglected to bring, that is seized on as the ground for presuming a grant in favor of long possession and enjoyment, the theory being that this adverse state of things would not have been submitted to if there had been no grant."

The testimony on the part of respondents was to the effect [2] that the predecessors in interest of appellant only used water, after Boyer came on the creek, through permission of Boyer; but, as the court found that Boyer's right dated only from June 20, 1890, and as appellant and his father came into possession of the Boehler place in 1899, the period covered was not sufficient under the statute (secs. 9015 and 9020, Rev. Codes 1921) even though it be conceded that, during

that period, the requirements of the rule laid down above were fully met as to that period.

The evidence as to the conditions existing after appellant acquired his lands and water right is very meager. True, Boyer testified that he had always used all the water he needed, and that no one had ever turned off his water, nor had any objection to such use until a short time before the commencement of this action; but this showing does not constitute adverse user if, after 1899, appellant also had all the water he needed. Asked on cross-examination: "Did Boehler and his father use water through there when they wanted it?" Boyer answered: "No, sir; they took water out with a little pipe and siphoned it over the top of the ditch * * * and I went and shut that off." As Boehler owned a separate ditch tapping the creek at a point half a mile above Boyer's ditch, and in which Boyer had no interest, and as the evidence showed that Boehler took his water through the upper ditch, the question and answer have no application to Boehler's general use of water, but referred merely to an attempt to take water from Boyer's ditch; this statement is borne out by certain testimony concerning a small garden Boehler had "down there."

The foregoing contains all of the evidence on the part of the respondents touching on the question of adverse possession and user of the waters in question.

Appellant admitted that he had never objected to Boyer's use of the water up to the time, several months prior to the commencement of this action, when Boyer had, as he claimed, dammed up the creek and backed the water up. From this testimony, as well as that of other witnesses, it appears that the head springs, from which the appellant got his water, dried up in July, August or later each year, according to the dryness of the season, and that after the drying up of these springs, appellant got no water through his ditch. On rebuttal he was asked whether there was ever a time when he did not get all the water he wanted, and in reply he an-

swered: ''Well, when there was dry seasons, I didn't get any.'' But this testimony clearly referred to former testimony concerning the dry seasons, and the condition did not result from any action on the part of respondents or their use of the water.

There is no testimony whatever showing that Boyer ever objected to the use of the water by Boehler, or that he ever attempted to prevent appellant from using all the water he wanted, with the exception of the use of the half-inch pipe referred to, or that, as in the case of Deemer, Boehler used the water by permission of Boyer or asked his consent at any time. There is no evidence that Boehler's crops ever suffered by reason of failure to get water for their irrigation while respondents were using water, which is one of the tests applied in *Smith* v. *Duff, supra,* and which would have shown that appellant needed the water at a time when respondents were taking it.

Appellant himself introduced a report of the state engineer for 1913–14 showing that the stream contains fifty inches of water, but neither party contends that this report had any particular bearing on the issues.

Counsel for respondents argues that ''the dry seasons have not all occurred in the past two years, and if Deemer needed the water as far back as 1892, it appears reasonable that Boehler has needed it since.'' However, as pointed out, the evidence does not establish conditions existing during appellant's time similar to those pertaining during Deemer's holding; the dry seasons' shortage, according to the evidence, prevailed only during the months of July, August, or later, when the source of supply at the head of appellant's ditch dried up while the springs at the head of respondents' ditch still flowed, and if respondents continued to secure water at the head of their ditch, it must have been water which appellant could not have used, and, therefore, such use could not have been an invasion of his rights.

The burden of proving an adverse user of water rests upon [3] him who alleges it. (*Smith* v. *Duff, supra.*) In order to support the finding of adverse user by Boyer, it was incumbent upon him to prove by a preponderance of the evidence, not only that his use was open, notorious, continuous, adverse and exclusive, under claim of right, for the statutory period of ten years, but that the prior appropriator, the appellant, had actual need of the water during that period, and that the use was such that, during all of that period, appellant could have maintained an action against him for so using the water. We have searched the record in vain for such proof. Not only does the evidence decidedly preponderate against respondents, but there is hardly a scintilla of evidence in the record to maintain the burden of proof resting upon them. The court evidently fell into error, on this phase of the case, by reliance upon the rule laid down in the cases cited by respondent's counsel, to-wit, *Glantz* v. *Gabel* and *Hays* v. *De Atley, supra,* which rule, as heretofore stated, applies properly to facts necessarily showing an invasion of rights, but does not apply to the facts here, where such a conclusion cannot be reached.

2. There is no merit in the second assignment. The evidence [4] discloses that the Boyer land is rocky and gravelly, and requires a greater amount of water to the acre than does that of appellant, and, in addition to the condition of the soil, the fact is established that little use can be made of less than an irrigating head, and that the small area under cultivation by respondents warrants an award of sufficient water to constitute a fair head of water. The award of two inches to the acre is justified by the evidence.

3. The court found that the respondents had always used [5] seventy inches of water on their lands and that that amount was necessary. These findings called for a decree awarding them such amount on the land, and, if the method adopted by the court accomplished this purpose, no substantial error was committed. There is no hard and fast rule as to where water shall be measured.

[72 Mont. 472.]

Appellant is unduly apprehensive as to the result of the order fixing the location of the measuring-box at the dividing line between the two ranches. The order does not require appellant to keep any portion of respondents' ditch in repair, nor to deliver seventy inches of water at their headgate, but merely enjoins him from interfering with the diversion by respondents of a sufficient amount of water to measure seventy inches at their headgate, while the ditch is kept in repair for its reception by the owners thereof. This is so even though the decree awarding respondents the first right were permitted to stand.

The respondents made no complaint as to the findings or decree concerning their rights, and as all the facts necessary to a complete decree in conformity with the views hereinbefore expressed are before the court, there is no necessity for a reversal and a new trial, with its attendant expense. There is no justification, however, in the record for the finding that appellant is entitled to 180 inches of water for the irrigation of 120 acres of land. The pleadings and proof show that he is entitled to 110 inches of water for the irrigation of 110 acres of land.

The cause will, therefore, be remanded with direction to the district court of Sanders county to modify its said decree by awarding appellant 110 inches of the waters of Lynch Creek, as of date of September 1, 1882, which right is prior in time and prior in right to the awards to the respondents; the respondents' rights to remain as fixed in said decree, except that they are subsequent in right to the right of appellant, and, as modified, the decree will be affirmed.

The appellant is awarded his costs on appeal.

*Modified and affirmed.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES HOLLOWAY and STARK and HONORABLE C. W. POMEROY, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, concur.